**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

STEVEN ALLEN THOMASON, #376662,

       Petitioner,                    Civil No. 2:09-11012
                                      Honorable Gerald E. Rosen

v.

NICK LUDWICK,

       Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND**
**DENYING CERTIFICATE OF APPEALABILITY**

      Petitioner, Steven Allen Thomason, presently incarcerated at the Mid-Michigan

Correctional Facility in St. Louis, Michigan, filed a pro se petition for writ of habeas corpus

pursuant to 28 U.S.C. §2254.  He is serving a term of four years and nine months to fifteen

years' imprisonment for his Oakland Circuit Court conviction of second-degree criminal

sexual conduct, MICH. COMP. LAWS §750.520c(1)(a).  For the reasons stated below, the

Court denies the petition.  The Court also declines to issue Petitioner a certificate of

appealability.

## I. Background

      The charges against Petitioner alleged that he sexually assaulted his niece, R.T.,

when she was either ten or eleven years old.  R.T. did not inform any adults about the

assaults for several years.  She was eighteen years old at the time of trial.

      R. T. testified at trial that on three occasions Petitioner did things to her when she

was a child that made her uncomfortable.  It happened twice at Petitioner's house in Orion

Twp, and once at a shopping mall. The first incident happened when R.T. and her parents were at Petitioner's house for a family gathering. R.T. was in the 6th grade and was ten or eleven years old. Petitioner was showing R.T. how to play a pinball game on the computer. R.T. was sitting on his lap. While R.T. had her hands on the computer keyboard and her arms stretched out in front of her, Petitioner moved his hands up to her breasts and started rubbing and massaging them for a couple minutes. Petitioner stopped touching R.T. when his father called him into the kitchen. R.T. knew what Petitioner had done was wrong, but she did not tell her parents because she was afraid they would not believe her.

The second incident happened a couple of months later when R.T. went to Petitioner's house alone. Petitioner was giving an old computer to R.T.'s family, and he was going to show R.T. how to put it together and use the software. Petitioner's wife was downstairs watching television while Petitioner showed R.T. how to use the computer in an upstairs bedroom. When R.T. reached up to the keyboard to try something Petitioner had taught her, Petitioner put his hands on her breasts. He moved his hands, massaging her breasts, just like the first incident. Petitioner then reached under her shirt and touched the bare skin of her abdomen. Petitioner tried to slide his hands up to her breasts under her shirt, but R.T. crossed her arms and told him "no." She got up and started crying.

Petitioner left the room and turned on the attic fan, which was very loud. He told her that he was very sorry and told her he would pay for her college if she didn't tell anyone. Thereafter, R.T. tried to avoid being alone with Petitioner.

The third incident occurred at a shopping mall. Petitioner took her shopping to buy school clothes. R.T.'s aunt was supposed to go too, but when Petitioner arrived to pick her up, she was not with him. R.T. unsuccessfully tried to talk her mom into going with them.

2

When Petitioner parked his car at the mall, Petitioner picked up his camera and told R.T. that he wanted to take pictures of her in the dressing rooms.  R.T. said "no."

R.T. did not tell anyone what Petitioner had done until about two years later.  The first person R.T. told was her boyfriend.  They were confiding secrets, and R.T. told him what Petitioner had done.  A couple of days after this conversation, R.T. told her mom. R.T. testified that, when Petitioner moved into her neighborhood, she finally came forward and was willing to talk to the police about what happened because she was afraid for herself and other kids in the neighborhood.

R.T.'s mother, Kathy Tatarcuk, testified that when R.T. was in the 8th grade she came to her very upset and cried as she told her what had happened with Petitioner.  Ms. Tatarcuk did not report it to the police at that time because going to the police was a "scary idea."  She had no support system apart from her family and was afraid that reporting the incidents would affect the rest of the family, and R.T. was not ready to talk to the police. R.T.'s father had moved out about a year earlier, and R.T. asked her mom not to tell her dad.  Ms. Tatarcuk then spoke to Petitioner, confronting him with what R.T. had reported. Petitioner said that he put his hand on R.T.'s thigh and, when she said "no," he stopped.

R.T.'s father, Mark Tatarcuk, testified that when R.T. was seventeen years old, she came over to his house and told him about what happened.  She broke down in tears as she spoke.  Mr. Tatarcuk wanted to notify the police.  Within a couple of weeks he took R.T. to the police station.

After the matter was reported to the police, R.T.'s mother received a letter from Petitioner.  The letter was admitted as an exhibit at trial.  In the letter, Petitioner expressed his regret and asked permission to speak to R.T. so he could ask her to drop the charges.

Petitioner offered to move out of state and never come back as an alternative means to address the situation. Petitioner acknowledged R.T.'s pain and stated that his goal was "to never hurt anyone again."

Petitioner testified that he was fifty-five years old at the time of trial. Petitioner admitted that he and R.T. had used his computer together. Both times, R.T. sat on Petitioner's lap. The first time, they played computer games. Petitioner testified that he hugged R.T. from behind while they played. He denied that he rubbed R.T.'s breasts. During the second incident, Petitioner was showing R.T. how to use some software. Petitioner testified that he hugged her again, but he did not rub her or try to reach under her shirt. Petitioner testified that he didn't give any thought to where his hand was and did not act with any sexual purpose. Petitioner testified that R.T. never cried or indicated that she was uncomfortable with what he was doing.

In 2001, Petitioner's sister told him about the allegations. He told Ms. Tatarcuk that he did not do anything wrong. Petitioner testified that he wrote the letter because he wanted R.T. to drop the charges, even though he did not feel he had done anything wrong.

The jury found Petitioner guilty of one count of second-degree criminal sexual conduct.

The presentence report showed that Petitioner had been previously convicted in Wayne County of second-degree criminal sexual conduct for molesting his 5-year-old step-granddaughter and had been convicted in 2005 in Oakland County for failing to register as a sex offender. The court sentenced Petitioner to 57 months-to-15 years in prison.

Petitioner filed an appeal by right. His appellate counsel filed a brief in the Michigan

4

Court of Appeals that raised two claims:

> I.  Defendant is entitled to a new trial based on ineffective assistance of counsel after defense attorney struck an illusory deal with the prosecutor and court that allowed a highly incriminating piece of evidence to be admitted and which ultimately resulted in defendant's conviction.

> II.  Defendant is entitled to by resentenced where he was scored 25 points in OV 13 and where more than five years had passed between the three offenses counted in the scoring.

> Petitioner also filed a supplemental pro se brief, enumerating two claims:

> I.  Defendant was denied his federal constitutional rights to equal protection and due process and is entitled to resentencing based on prosecutorial malfeasance, court malfeasance, ineffective assistance of counsel, insufficiency of the evidence, jury selection and instruction errors, and the cumulative effect of all issues, relative to the hundreds of enunciated actions and omissions examined herein that ultimately resulted in defendant's improper, disproportionate sentence.

> II.  Defendant was denied his state and federal constitutional rights to equal protection and due process and is entitled to new trial, based on prosecutorial malfeasance, court malfeasance, ineffective assistance of counsel, insufficiency of the evidence, jury selection and instruction errors, and the cumulative effect of all issues, relative to the hundreds of enunciated actions and omissions examined herein that ultimately resulted in defendant's conviction.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentence in an unpublished opinion.  *People v. Thomason*, 2008 Mich. App. LEXIS 912 (Mich. Ct. App. May 6, 2008).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court.  The application does not enumerate claims and is largely incoherent, but its major theme appears to be  that the Michigan Court of Appeals ignored "hundreds" of issues that Petitioner claims he raised in a 450-page appendix he filed with that court.  The Michigan Supreme Court denied leave to appeal by standard order.  *People v. Thomason*, 482 Mich.

5

989, 756 N.W.2d 60 (2008).

Petitioner's amended petition also does not enumerate claims. Like Petitioner's other pleadings, it largely attempts to refer the Court to his 450-page appendix that was filed with the Michigan Court of Appeals to discern the "hundreds - perhaps over 1000 issues." Amended Petition, at 25. As this Court has already warned Petitioner before he filed his amended petition, it is not the job of this Court to go on a fishing expedition through an appendix filed in a state court to find issues that are not presented within the text of the habeas petition. *See Green v. Johnson*, 160 F.3d 1029, 1036, fn. 2 (5th Cir. 1998) (discussion regarding how it is not the responsibility of the court to search the record for facts supporting a habeas claim).

Nevertheless, after a painstaking review of Petitioner's amended petition, the Court finds that it fairly raises the following four groups of issues:

I.  The conduct of the prosecutor: (1) suppression of letters written by Petitioner; (2) failure to call eyewitnesses who would have provided exculpatory testimony; and (3) argument that Petitioner's letter to his sister was inculpatory despite having knowledge of the exculpatory context in which it was written.

II.  The conduct of the trial court: (1) unfamiliarity with the basic facts of the case; and (2) failure to properly instruct the jury regarding fourth-degree criminal sexual conduct.

III.  The conduct of defense counsel: (1) failure to prepare for trial; (2) admission of Petitioner's guilt in closing argument; (3) failure to call eyewitnesses to both incidents; and (4) failure to contest the age of the victim at time of the incidents.

IV.  The conduct of the Michigan Court of Appeals: (1) wrongful denial of an evidentiary hearing; and (2) limiting Petitioner's supplemental brief to 50 pages.

## II. <u>Standard of Review</u>

6

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v.*

7

*Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, No. 2011 WL 148587, * 11 (U.S. 2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. 770.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

8

fairminded disagreement." 131 S.Ct. at 786-787.

## IV.  Discussion

### A.  Conduct of the Prosecutor

Petitioner claims that the conduct of the prosecutor rendered his trial fundamentally unfair.  He asserts that the prosecutor suppressed other letters written by Petitioner that would have put into context the one letter that was admitted into evidence.  He challenges the prosecutor's failure to call Petitioner's father and other eyewitnesses who would have provided exculpatory testimony.  And finally, he asserts that the prosecutor drew an improper inference from Petitioner's letter despite knowledge of the exculpatory context in which it was written.

Some of these claims were specifically considered and rejected by the Michigan Court of Appeals:

> Defendant claims the prosecutor concealed 24 or more res gestae witnesses, manufactured evidence, concealed additional letters and a social worker report that exonerated him, and misled the jury with deliberate lies, including representations that complainant was consistent.  There is no evidence of the existence of the letters, and defendant suggests that they may have been destroyed.  Defendant suggests the social worker report would have indicated that he touched complainant's thigh, not her breast. Defendant does not cite to the record to support these assertions.  While a prosecutor may not knowingly use false testimony to obtain a conviction, has a constitutional obligation to make a report when a witness lies under oath, and has a duty to correct false evidence, *People v. Lester*, 232 Mich. App. 262, 276; 591 N.W.2d 267 (1998), defendant has failed to establish that any of these things actually occurred.

*Thomason*, 2008 Mich. App. LEXIS 912 at *4.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935).  When a petitioner seeking habeas relief makes a claim of

prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-1356 (6th Cir. 1993).

Petitioner first alleges that the prosecutor failed to present other letters Petitioner wrote to the victim's mother. As the state appellate court correctly noted, nowhere does Petitioner allege or explain how these other letters, if they exist at all, would have benefitted his defense. "Conclusory allegations, without evidentiary support, do not provide a basis for habeas corpus relief." *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003). Petitioner vaguely asserts that they would have put into context the one letter that was admitted, but the record shows that when Petitioner testified in his own defense he attempted to explain why he sent the letter and how it was not an admission of guilt. He never testified that he had sent other letters to the victim's mother. And he does not now explain why or how the text of these other letters would have been more persuasive than the explanation he gave to the jury himself.

Petitioner next alleges that the prosecutor suppressed eyewitness testimony. Specifically, Petitioner is referring to his family members that were present at his house during the first incident and his wife who was present when the second incident occurred. The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been

10

suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."
*Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The claim fails for several reasons.  First, the witnesses in question were obviously known to Petitioner, and so the prosecutor was not required to disclose their identities.  It is well established that "[t]here is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (internal quotations omitted); *see also*, *Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004). Second, there is no basis in the record to conclude that the testimony of these witnesses would have been favorable to Petitioner.  The evidence presented at trial with respect to the first incident indicates that the offense occurred in a small area where Petitioner was alone with the victim and that the so-called eyewitnesses were in the kitchen.  The victim testified that Petitioner stopped molesting her when his father called him into the kitchen.  With respect to the second incident, the victim and Petitioner both testified that Petitioner's wife was in the house, but downstairs, when the incident happened in an upstairs bedroom.  Petitioner has made no proffer by way of affidavits of the uncalled witnesses or otherwise to show that they would have provided favorable testimony.

Petitioner finally asserts that the prosecutor's closing argument unfairly characterized the letter that was admitted into evidence.  When analyzing a claim that a prosecutor committed misconduct during closing arguments, a court must initially decide whether the challenged statements were improper. *Boyle v. Million*, 201 F. 3d 711, 717 (6th Cir. 2000).  If the conduct is improper, the district court must then examine whether the

11

statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ. *Id.* In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Serra,* 4 F. 3d at 1355-56; *See also Simpson v. Warren,* 662 F. Supp. 2d 835, 853 (E.D. Mich. 2009). The prosecutor drew a fair inference from the letter. Petitioner stated in the letter that he was "sorry for the pain I have put everyone through," that he would "do my best never to hurt anyone again," and asked his sister "to forgive me just enough to not end my life." It was not improper for the prosecutor to argue that these statements and others in the letter constituted an implicit admission of guilt.

Accordingly, Petitioner has to demonstrate entitlement to habeas relief based on his complaints about the conduct of the trial prosecutor.

### B. Conduct of the Trial Court

Petitioner also challenges the conduct of the trial court. First, he asserts that the trial judge was incompetent because she asked "who is Steve" when reviewing the letter written by Petitioner to the victim's mother. Next, he asserts that the trial court erroneously instructed the jury on fourth-degree criminal sexual conduct.

The first allegation is spurious. After opening statements, the jury was excused and the prosecutor moved in limine for a ruling on the admissibility of a letter. The prosecutor handed a copy of the letter to the trial court, whereupon the court asked "who's Steve?" Trial Tr. at 44. The prosecutor responded that "Steve" was the defendant, and that the

letter was written by him and delivered to his sister, the victim's mother.  Id., at 45.  Defense counsel did not dispute that the letter was written by Petitioner and indicated that there were other letters as well, but he did not "want to try all these side issues regarding when he (Petitioner) was molested by the (victim's) mother" Id., at 48.  The court found that the letter was admissible.

Petitioner makes the cynical assertion that the question "who's Steve?" reflected the incompetence of the trial court because it did not know the name of the defendant before it.  A more reasonable explanation is that the trial court was ascertaining the authorship of the letter. The letter was not signed "Steven Thomason" and it is far more likely that the trial court was questioning whether there was a dispute that Petitioner was the author of the letter.  The Court will not accept a cynical interpretation of the record when a more reasonable one is available.  On habeas review, state court decisions are treated with high deference and are "given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

Petitioner's second allegation of trial court error is likewise without merit.  Petitioner claims that the trial court erred in failing to instruct the jury on all the versions of the lesser offense of fourth-degree criminal sexual conduct.

The Supreme Court has held that erroneous jury instructions in a state criminal trial are generally not reviewable in a habeas corpus proceeding unless the "instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten,* 414 U.S. 141, 147 (1973).  Habeas review of state jury instructions is very narrow because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

13

The jury was instructed as to the elements of fourth-degree criminal sexual conduct as follows:

> You may also consider the lesser crime of fourth-degree criminal sexual conduct. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt.
>
> First, that the defendant intentionally touched R.T.'s breast or the clothing covering that area. Second, that this was done for a sexual purpose or could reasonably be construed as having been done for sexual purposes.
>
> Third, that R.T. was 13, 14, or 15 years old at the time of the alleged act, and defendant was then five or more years older than that.

Trial Tr. II, at 11.

Petitioner asserts that this was an incomplete instruction. He notes that the third element of the offense can also be satisfied if the victim is related to the defendant by blood or affinity, such as his relationship to the victim in this case. See MICH. COMP. LAWS 750.520e(1)(a) and (d). He essentially argues that there was no real prospect of the jury finding him guilty of the lesser offense given the evidence that the victim was under the age of thirteen, but given the undisputed evidence of his blood relationship to the victim, the jury more likely would have convicted him of this lesser offense if they had been given the alternate version of the third element.

This speculative claim is without merit. First, Petitioner's claim requires the Court to speculate that the jury did not truly believe him to be guilty of second-degree criminal sexual conduct, but did so anyway because they were not given another plausible option other than rendering a verdict of not-guilty. In other words, Petitioner makes the implausible suggestion that the jury was pedantic when it came to applying the lesser-offense instruction it was given, but then it ignored the more basic instruction on the

14

prosecutor's burden of proof and dishonestly convicted him of the greater offense rather than acquit him.

In any event, the argument amounts to the non-cognizable claim that the trial court failed to instruct the jury on an applicable lesser offense.  A state trial court's failure to instruct the jury on a lesser included offense in a noncapital case is "not such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990).

Finally, any error in failing to give this other version of the lesser-offense instruction was harmless given the jury's decision to convict Petitioner of the greater offense of second-degree criminal sexual conduct.  *See Abdus-Samad v. Bell*, 420 F.3d 614, 628 (6th Cir. 2005) (jury's decision to convict the petitioner of first-degree felony murder even though the jury was also instructed on the lesser-included offense of second-degree murder "strongly suggests" that the trial court's failure to instruct the jury on the lesser offenses of voluntary and involuntary manslaughter was at most harmless error).  Therefore, Petitioner is not entitled to habeas relief with respect to this claim.

## C. **Conduct of Defense Counsel**

Petitioner alleges that he was denied the effective assistance of counsel at trial. He asserts that his trial counsel failed to properly prepare a defense, admitted Petitioner's guilt during his closing argument, failed to call eyewitnesses of both incidents, and failed to contest the age of the victim at the time of the incidents.

These claims, and other allegations not fairly presented in the present case, were considered and rejected by the Michigan Court of Appeals:

> Defendant asserts counsel failed to investigate and request the prosecutor's discovery. While the failure to reasonably investigate can constitute ineffective assistance of counsel, *People v. McGhee*, 268 Mich. App. 600, 626; 709 N.W.2d 595 (2005), there is nothing more than an assertion to support this claim. Defendant also claims that counsel failed to use numerous tools for his defense, including calling the other res gestae witnesses, impeaching witnesses, and introducing other letters. Defendant contends the witnesses would have established that the alleged touching took place eight feet from a kitchen table that was always filled with people. However, since the victim indicated that no one else was around at the time the incidents occurred, and it is implausible that there always would have been people present, the decision to forego calling these witnesses was likely a matter of trial strategy, and will not be disturbed. *People v. Matuszak*, 263 Mich. App. 42, 58; 687 N.W.2d 342 (2004). Defendant claims counsel stated that he was guilty, but does not cite the record in support of this assertion. Presumably, he is referring to counsel's strategy of using the letter to argue that a crime, if any, was CSC IV given the age of complainant. In doing this, counsel did not concede defendant's guilt. Cf. *People v. Emerson* (After Remand), 203 Mich. App. 345, 349; 512 N.W.2d 3 (1994). Defendant also says counsel should have developed the defense that his niece was blackmailing him because he refused to pay for her to go to college. However, the defense summarized in counsel's closing argument was that defendant never called complainant a liar because he believed she thought something untoward had happened, but because she had misinterpreted his actions. The decision to forego a defense at odds with this one was likely a matter of strategy.
>
> Defendant also claims counsel had no contact with him while in jail, did not advise him of his rights, apparently with regard to sentencing, and did

16

not instruct him on certain sentencing matters. These matters cannot be verified by the record. He asserts that he was denied allocution because his lawyer told him to be quiet. The transcript establishes that he was asked if he wanted to say anything but declined, citing advice of counsel. There is nothing to suggest this advice was unreasonable.

*Thomason*, 2008 Mich. App. LEXIS 912, at *5-7.

Because the Michigan Court of Appeals addressed this claim on the merits, the Court's review is limited by 28 U.S.C. § 2254. The Michigan court's factual holdings are presumed correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e). Relief may be granted only if the decision of the Michigan court was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding or was contrary to or an unreasonable application of clearly established federal law as established by the holdings of the United States Supreme Court. 28 U.S.C. § 2254(d).

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466

17

U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

> Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S.       , 130 S.Ct. 1473, 1485 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at      , 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at      , 129 S. Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*,      U.S.      , 131 S.Ct. 770, 788 (2011).

Petitioner has not met the burden of demonstrating that the Michigan Court of Appeals' adjudication of his claim was unreasonable under this standard.   Petitioner first asserts that his trial counsel failed to properly prepare a defense.  Both the prosecutor's theory of guilt and the defense theory were simple.  The complainant claimed that Petitioner inappropriately touched her on two occasions, and Petitioner claimed that while he did hug her, he did not do so for any sexual purpose.   The prosecutor buttressed its case with Petitioner's letter to the victim's mother, and Petitioner responded by offering an innocent explanation for the letter.   A fair review of the trial record shows that Petitioner's trial attorney adequately presented Petitioner's rather straight-forward defense.  Through cross-examination of the complainant, counsel attempted to establish that she falsely accused Petitioner in an effort to extort money from him.  And through Petitioner's testimony, he attempted to establish that Petitioner never touched her for a sexual purpose.  This tactic provided a basis for defense counsel to explain that Petitioner's letter was a response to a false accusation of sexual abuse.  As the Sixth Circuit has explained, "just as (or more) important as what the lawyer missed is what he did not miss. That is, we focus on the adequacy or inadequacy of counsel's (hindsight) potential for improvement." *Coe v. Bell*, 161 F.3d 320, 342 (6th Cir. 1998).  Petitioner's vague allegations that his counsel should have done more does not overcome the strong presumption that counsel performance was objectively reasonable or that the state court's rejection of his claim was unreasonable.

Petitioner also claims that his attorney admitted his guilt during closing argument. The allegation is unfounded.  During closing argument counsel repeatedly refered to "incidents" occurring, but he characterized them as "inadvertent touching," as "having no sexual purpose whatsoever," and as "hugging, but it wasn't quite the level of criminal sexual

19

conduct."  Trial Tr. at 182, 185.  Defense counsel also stated "now, something happened in 2001 to creep [the victim] out," but this was in reference to the suggestion that the something happened between the victim and her boyfriend, not Petitioner.  Id., at 184. Counsel also stated that Petitioner "doesn't believe she's lying."  Id. at 186.  But again, this argument comported with Petitioner's defense and testimony that the victim was mistaken as to the Petitioner's innocent intent.  Accordingly, the record simply does not support Petitioner's claim that his trial attorney conceded his guilt during closing argument.

Petitioner also asserts that his counsel deficiently failed to call eyewitnesses of both incidents.  The victim testified that the first incident occurred at Petitioner's house during a family gathering and that her mother, grandparents and aunts and uncles were there. She testified that the incident occurred in a room between the garage and kitchen. Petitioner claims that his attorney should have called the family members present to testify in his defense.  The second incident occurred in an upstairs bedroom while Petitioner's wife was at home.  He claims that she should have been called as a defense witness as well. The chief problem with this claim is that Petitioner has provided no basis for concluding that his family members would have contributed to his defense.  To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that the witness's testimony would probably have changed the outcome of the trial. *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996).  Petitioner has provided no affidavits or other offer of proof that these witnesses would have benefitted his defense.  Moreover, the record shows that Petitioner's wife was on another floor of the house when the second incident occurred, and Petitioner never claimed during his testimony that someone else was present in computer room when the first incident

20

occurred.  The state appellate court reasonably rejected this claim.

Finally, Petitioner claims that his counsel failed to contest the age of the victim at the time of the incidents.  The victim testified that the first incident occurred when she was in 6th grade and ten or eleven years old.  The second incident occurred a couple of months later.  The victim recalled that she was supposed to bring her best friend with her on that occassion, and she knew that that friend moved out of state after the 6th grade.  Petitioner does not suggest how his trial counsel would have been able to undermine this testimony.  In fact, defense counsel did attempt to cast doubt regarding the victim's age during his closing argument.  He pointed out that Petitioner's letter referred to not having done anything wrong for five years, which would have made the victim 13 years-old.  It was a specious argument, but perhaps the best one available to trial counsel with respect to this point.  Petitioner has failed to demonstrate how his counsel could have more successfully challenged the age of the victim.

The decision of the Michigan Court of Appeals rejecting Petitioner's ineffective assistance of counsel claim was not unreasonable.

### D.  Conduct of Michigan Court of Appeals

Finally, Petitioner challenges the actions of the Michigan Court of Appeals.  He asserts that the state appellate court improperly denied his request for an evidentiary hearing - and that he is therefore entitled to one in this action.  He also asserts that the state court failed to address all the claims raised in what he refers to as his "appellate package," and violated due process by limiting his pro se submission to 50 pages.

With respect to the alleged right to an evidentiary hearing in state court, "[w]hether or not the Michigan courts complied with the procedural requirements of Michigan law is

21

not a matter for this court to decide on a petition for habeas corpus relief.  Rather, in terms of granting habeas relief, the relevant inquiry is only whether the state court decision was in violation of [Petitioner's] federal constitutional rights." *Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006) (citing *Baze v. Parker*, 371 F.3d 310, 322-23 (6th Cir. 2004)).

Petitioner "cites no Supreme Court precedent indicating that a defendant has a constitutional right to an evidentiary hearing in state court to develop his claim of ineffective assistance of counsel on appeal." *Id.* "Thus, [Petitioner] has not shown that the Michigan Court of Appeals' decision to deny his request for an evidentiary hearing was contrary to or an unreasonable application of clearly established federal law." *Id.* at 585.

Nor is Petitioner entitled to a hearing in this Court.  In *Cullen v. Pinholster*, 131 S.Ct.1388, 1398, 179 L. Ed. 2d 557 (2011), the Supreme Court recently held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Where, as here, the Court has already determined that habeas relief is barred by § 2254(d) because the state trial court reasonably decided Petitioner's claims, no amount of new evidence in support of the underlying claim can impact the result. Accordingly, Petitioner request for an evidentiary hearing is denied.

With respect to the state appellate court's page limitations, enforcing page limits and other restrictions on litigants is rather ordinary practice that does not violate due process. *Watts v. Thompson*, 116 F.3d 220, 224 (7th Cir. 997);  *Bradford v. Wolfenbarger*, 2006 U.S. Dist. LEXIS 11340, 33-34 ( E.D. Mich. Feb. 28, 2006).  Petitioner ignored these limits at his own peril.

## VI.  Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the

22

denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)(citation omitted).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.  The Court concludes that jurists of reason would not find the Court's assessment of Petitioner's claims debatable or wrong. The Court thus declines to issue Petitioner a certificate of appealability.

23

## VI.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas

corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  July 12, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of
record on July 12, 2011, by electronic mail and upon Steven Allen Thomason, #376662,
Central Michigan Correctional Facility, 320 North Hubbard, St. Louis, MI 48880 by
ordinary mail.

s/Ruth A. Gunther
Case Manager